
RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 5/27/09
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| MARK FONTANA | CIVIL ACTION NO. 07-2046 |
| VERSUS | JUDGE ROBERT G. JAMES |
| JOHNNY'S PIZZA HOUSE | MAG. JUDGE KAREN L. HAYES |

RULING

This is an employment discrimination case brought by *pro se* Plaintiff Mark Fontana ("Fontana") against his former employer, Defendant Johnny's Pizza House ("Johnny's"). Pending before the Court is Johnny's Motion for Summary Judgment [Doc. No. 28] on Fontana's claims of religious discrimination and harassment and retaliation.[1]

For the following reasons, Johnny's Motion for Summary Judgment is GRANTED.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Johnny's Pizza House is a locally owned pizza chain with locations throughout North Louisiana. Fontana was hired by Johnny's on August 21, 1995. In 1996, Fontana was promoted to the position of assistant manager. He served as an assistant manager at various Johnny's locations from 1996 until 2001. On March 13, 2001, Fontana was promoted to store manager at the Rayville store, but was shortly thereafter transferred to the Calhoun store. Fontana remained the Calhoun store manager until May 23, 2006, the date of his termination.

During the relevant time period, Dennis Wills ("Wills"), the Market Manager for the West

---

[1] Also pending before the Court are Johnny's motion in limine [Doc. No. 37] and motion for sanctions [Doc. No. 39]. These motions will be ruled on separately.

1

Monroe market, was Fontana's direct supervisor, and Roy Peacock ("Peacock"), the General Manager, was Wills's direct supervisor. At the time of Fontana's transfer to store manager at the Calhoun store, Wills, who is Pentecostal, knew that Fontana is Catholic.

During Fontana's tenure as store manager, Johnny's received numerous complaints from subordinate employees and from customers. Fontana disputes the veracity of at least some of these complaints and alleges that Wills conspired with Pentecostal employees to lodge specious complaints against him.

In June 2004, Peacock and Jim Pettway, the General Counsel and Controller, had a meeting with Fontana to discuss his management problems, including his communication style and the high employee turnover rate at the Calhoun store. Wills was also present at the meeting. Johnny's paid for Fontana to attend a human resources and management seminar entitled "Handle People With Tact and Skill" on July 29, 2004.

According to Johnny's, Fontana's attitude and work performance worsened.

In early December 2005, Fontana was counseled by Wills for allegedly improperly delegating work.

In May 2006, Fontana opened the Calhoun store late all 12 days he was scheduled to open.

On May 16, 2006, Fontana met with Peacock to discuss his issues with Wills. Fontana surreptitiously recorded the conversation. During the conversation[2], Fontana raised the issue of religion. Fontana recited a situation where Wills let an employee, who was a member of Wills's church, quit without providing adequate notice, even though Wills had told Fontana that he would

---

[2] An audio recording of the conversation was provided to the Court. [Exh. 47]. The following conversation occurred at approximately 1:28–1:32.

ensure that the employee worked two weeks before quitting. Peacock acknowledged that Wills had been "burnt" by church members before. Fontana then speculated that perhaps Wills had a hard time believing him because he is Catholic, and perhaps Wills perceives Catholics to be less believable. Fontana also speculated that Wills singled him out and held him to a higher standard because they used to belong to the same Catholic church. Peacock's response is muddled, but he appeared to agree with Fontana that some people associate religious affiliation with morality. However, Peacock also stated that he did not think religion was the source of the problem between Wills and Fontana.

On May 22, 2006, the local high school placed an order for 37 pizzas to be delivered to the school by 11:30 A.M. Fontana called Wills for assistance. According to Wills, Fontana needed assistance because he was 25 minutes late opening the store that morning.[3] Wills expressly instructed Fontana to arrive early for work the next day, May 23, 2006, in case the high school placed another large order.

On May 23, 2006, Fontana opened the store 45 minutes late. Upon learning of the "late to open" situation, Wills called Fontana and came to the store himself. When Wills and Fontana met in person, Wills told Fontana that he was being terminated effective immediately for the stated reasons of chronic tardiness and insubordination.

As Fontana was leaving the store, Peacock arrived. They re-entered the store, and Peacock conducted a 25 minute meeting with both Fontana and Wills. Wills's termination decision was allowed to stand.

On June 11, 2006, Fontana submitted a charge questionnaire to the EEOC.

On August 15, 2006, Fontana filed a charge of discrimination with the EEOC.

---

[3] Fontana does not dispute that he was late the morning of May 22, 2006.

On November 27, 2007, Fontana filed suit against Johnny's [Doc. No. 1].

On February 3, 2009, Fontana filed an amended complaint [Doc. No. 19].

On March 23, 2009, Johnny's filed a Motion for Summary Judgment [Doc. No. 28] and a Statement of Uncontested Facts [Doc. No. 28-2].

On April 7, 2009, Fontana filed a memorandum in opposition [Doc. No. 30] and a Statement of Uncontested Facts [Doc. No. 30-2].

On April 20, 2009, Johnny's filed a reply [Doc. No. 36] in support of its Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19

F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.[4]

B.      **Religious Discrimination**

Fontana claims that he was discriminated against by Wills either because Fontana is Catholic, because Fontana is not Pentecostal, or because Fontana refused to give preferential treatment to Pentecostal employees.[5]

Johnny's moves for summary judgment on Fontana's religious discrimination and hostile work environment claims. Title VII forbids employers to take actions on the basis of religion that "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Religious harassment is a form of religious discrimination prohibited under Title VII. *See EEOC v. WC&M Enters.*, 496 F.3d 393, 399–402 (5th Cir. 2007).

---

[4]Johnny's contends that Fontana failed to controvert its statement of material facts and, therefore, the uncontroverted facts should be deemed admitted. *See* Local Rule 56.2. Fontana submitted a "Statement of Uncontested Facts" in which he lists ten "uncontested" facts. Fontana failed, however, to explicitly controvert the facts asserted by Johnny's. It appears to the Court that Fontana, who is proceeding *pro se*, intended to list the facts that he did not contest and, by implication, controvert all other facts asserted by Johnny's. The Court finds this to be an imperfect but good faith attempt to comply with Local Rule 56.2. Therefore, the Court will not automatically deem all uncontroverted facts admitted. Of course, the Court will deem facts admitted where Fontana has failed to offer contrary evidence.

[5]Fontana's theory of religious discrimination is somewhat muddled; however, in his deposition he offered three reasons why he felt he was discriminated against. [Doc. No. 28-5, Fontana Deposition I, p. 34:12–19].

5

To state a *prima facie* case of religious discrimination, Fontana must establish that he (1) is a member of a protected group, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected group. *See Okoye v. Univ. of Texas Houston*, 245 F.3d 507, 512–13 (5th Cir. 2001).

Johnny's contends that Fontana cannot establish a *prima facie* case because most of the actions he complains of are not "ultimate employment decisions" and because he cannot show that he was replaced by someone outside his group or that similarly situated employees were treated more favorably.

The Court agrees that Fontana has failed to state a *prima facie* case of religious discrimination. Fontana complains that Wills subjected him to negative treatment; held him to different, more arduous standards; encouraged complaints against him; and ultimately terminated him. Other than his termination, none of the actions Fontana complains of constitute actionable employment actions. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("[F]or all Title VII claims, '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'") (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

With respect to his termination, it is undisputed that Fontana was replaced by Colin O'Connor, who, like Fontana, is Catholic. [Doc. No. 28-4, O'Connor Affidavit, p. 24]. Thus, Fontana must show that he was treated less favorably than similarly situated employees. Fontana has failed to meet his burden.

"[T]o establish disparate treatment a plaintiff must show that the employer gave preferential

treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye*, 245 F.3d at 514. Johnny's claims that it terminated Fontana because of his chronic tardiness and insubordinate remarks. Fontana alleged in his complaint [Doc. No. 19] that Johnny's and/or Wills were more tolerant of the same or more serious faults of other employees. When questioned in his deposition about the identity of his alleged comparators, Fontana alleged that Derek Bounds ("Bounds"), a store manager, was tardy on a regular basis. Fontana did not know Bounds' religious affiliation. [Doc. No. 28-5, p. 47]. Regardless, Fontana admitted that Bounds was "either terminated by Mr. Wills or he and Mr. Wills decided that. . .his employment was not going to work out." [Doc. No. 28-5, p. 148]. Fontana also alleged that Johnny's and/or Wills tolerated the misconduct of Jacob Matthews ("Matthews"), an assistant manager. Fontana did not know Matthews' religious affiliation, but he stated that he did not believe that Matthews was Pentecostal. [Doc. No. 28-5, pp. 146–47]. However, Matthews is not a viable comparator because he held a lower ranking position. *See Merritt v. UPS*, No. 08-60448, 2009 U.S. App. LEXIS 8030, at *7 (5th Cir. Apr. 16, 2009) (holding that employees offered as comparators were not similarly situated because they "were not in the same position" as the plaintiff). Further, Fontana has not explained Matthews' alleged misconduct. Fontana also alleged that Johnny's and/or Wills tolerated the insubordination and tardiness of non-managerial employees [Doc. No. 30, p. 4]. These employees are also not viable comparators.[6] *See id.*

---

[6]Throughout Fontana's memorandum in opposition, he contends that Johnny's has refused to produce evidence that would support his claims. The Court notes that Fontana filed a motion to compel [Doc. No. 23], which was denied [Doc. No. 27] by Magistrate Judge Karen L. Hayes because he failed to confer with opposing counsel to attempt to resolve any discovery disputes prior to the filing of the motion to compel. Fontana was specifically advised that he could refile the motion if

Johnny's Motion for Summary Judgment on Fontana's claim of religious discrimination is GRANTED.[7]

### C. Hostile Work Environment

To prevail on a hostile work environment claim based on his supervisor's conduct, Fontana must prove that: 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment complained of was based on his membership in a protected class; and 4) the harassment affected a term, condition, or privilege of employment. *See Green*, 284 F.3d at 655.

Fontana is not required to show that he suffered a tangible employment action, but that the conduct of the alleged harasser was severe or pervasive enough to alter a term or condition of his employment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *see also Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434–35 (5th Cir. 2005) (A plaintiff need only show that conduct was severe or pervasive, not both.). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Whether an environment is objectively hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 21–22.

Johnny's contends that Fontana cannot rely on allegedly harassing acts that occurred 300 days

---

he complied with the foregoing requirement. Fontana did not refile the motion.

[7]Because the Court finds that Fontana has failed to establish a *prima facie* case of religious discrimination, the Court need not address Johnny's alternative basis for summary judgment.

before he filed a charge of discrimination with the EEOC, or prior to August 15, 2005. In addition, Johnny's contends that Fontana cannot sustain a hostile work environment claim because the alleged acts of harassment were not severe or pervasive and there is no evidence that the alleged harassment was based on religion.

In response to Johnny's Motion for Summary Judgment, Fontana argues only that a June 2004 meeting during which Johnny's threatened Fontana with termination and imposed "an unreasonable objective...to be liked by all employees" was an act of severe or pervasive harassment. [Doc. No. 30, p. 5]. Fontana argues that "the threat of termination as a consequence for a few complaints (accusations) by employees with at best, questionable credibility, is a severe act. Plaintiff was given a choice between losing his job immediately or attending a seminar allegedly intended to 'help' him make better decisions in how he treats his employees." [Doc. No. 30, p. 5]. Fontana emphasizes that these acts occurred after Sabrina Long, a Pentecostal employee, complained about him. [Doc. No. 30, p. 5].

Assuming that Fontana can rely on acts that occurred outside the limitations period[8], he fails to state a hostile work environment claim. Throughout his amended complaint [Doc. No. 19] and memorandum in opposition [Doc. No. 30], Fontana asserts that Wills mistreated him. Drawing all reasonable inferences in favor of Fontana, and assuming that he was subjected to unwelcome harassment, Fontana has failed to prove that the harassment was based on **his own** membership in

---

[8] A Title VII plaintiff usually cannot rely on acts outside the 300-day period. Without the application of the continuing violation theory, Fontana cannot rely on the June 2004 meeting or any other allegedly harassing conduct that occurred prior to August 15, 2005. *See Butler v. MBNA Tech., Inc.*, No. 04-10058, 2004 U.S. App. LEXIS 20132, at *5–7 (5th Cir. Sept. 24, 2004). For the reasons that follow, the Court need not determine whether Fontana can claim the benefit of the continuing violation theory.

a protected class, or because he is Catholic. Fontana's allegations make clear that he objects to Wills's preferential treatment of Pentecostal employees at the expense of the managers of Pentecostal employees. This, however, fails to show that Will's conduct was motivated by Fontana's religious affiliation. Fontana has speculated that he was mistreated because he is Catholic, but he has offered no evidence, only his subjective belief in support. *See Garza v. Laredo Indep. Sch. Dist.*, No. 08-40387, 2009 U.S. App. LEXIS 1810, at *6–8 (5th Cir. Jan. 30, 2009) (holding that the employee failed to establish a hostile work environment claim because there was no evidence, other than the employee's conclusory beliefs, to show that the harassment was motivated by the employee's national origin or race).

Fontana has also alleged that he was harassed because he is not Pentecostal. Even assuming Fontana's nonmembership in a protected class can sustain a harassment claim, the Court finds that the alleged acts of harassment, other than the termination, are not severe or pervasive. The termination fails to sustain a harassment claim because the Court has already determined that Fontana has no evidence that the termination was motivated by religious animus.

Johnny's Motion for Summary Judgment on Fontana's hostile work environment claim is GRANTED.

### D. Retaliation

Fontana claims that he was "retaliated" against by Wills throughout his employment at Johnny's and that Wills ultimately terminated him in retaliation for complaining of religious discrimination. Title VII prohibits an employer from discriminating against an employee because he has opposed an employment practice that is unlawful under Title VII or testified in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of unlawful retaliation, Fontana must show: (1) that he engaged in protected activity, (2) that he was subjected to a materially adverse employment action, and (3) that there is a causal connection between the protected activity and the materially adverse employment action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

Johnny's contends that Fontana cannot establish a *prima facie* case of retaliation because he did not engage in protected activity prior to May 16, 2006; the alleged harassment and other pre-termination conduct are not actionable; and there is no causal connection between Fontana's May 16, 2006 complaint of religious discrimination and his May 23, 2006 termination.

The Court agrees that Fontana has failed to state a *prima facie* case of retaliation. Fontana previously complained to Peacock and others that he was unfairly treated by Wills, but it is undisputed that he first implied that he was mistreated by Wills **because of religion** on May 16, 2006, during a conversation between himself and Peacock. *See, e.g., Harris-Childs v. Medco Health Solutions of Tex. LLC*, No. 05-10543, 2006 U.S. App. LEXIS 6073, at *9–11 (5th Cir. March 13, 2006) (holding that an employee must put the employer on notice that the complaint is based on a protected characteristic for purposes of establishing that the employee engaged in protected activity). Assuming Fontana's complaint to Peacock constitutes protected activity, the Court finds that Fontana first engaged in protected activity on May 16, 2006. For purposes of determining whether there is a causal connection, the Court's analysis is thus limited to the events that occurred after May 16, 2006.

Fontana relies on the temporal proximity between his May 16, 2006 complaint to Peacock and his May 23, 2006 termination to show a causal connection between his protected activity and the materially adverse employment action.

Johnny's does not dispute that the termination constitutes an actionable employment action. Johnny's instead contends that Fontana cannot establish a causal connection because Wills was not aware of the protected activity when he terminated Fontana. Johnny's offers Wills's and Peacock's affidavit testimony in support.[9]

Fontana speculates that "a jury may find it hard to believe Mr. Wills had no knowledge of the complaint," but he admits that Peacock told him that he would not inform Wills of the complaint and concedes that "he has [not] established without a doubt that Mr. Wills had knowledge of his complaint." [Doc. No. 30, p. 8].

"In order to establish the causal link between the protected conduct and t he illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998). The Court finds that Fontana's speculation whether Wills was aware of the protected activity fails to raise a genuine issue of material fact on the casual connection element. *See id.* ("The plaintiff must reveal a conflict in substantial evidence

---

[9]Wills averred that

> [a]t the time I made the termination decision, I was not aware of a complaint made by Plaintiff during his employment that he was being discriminated against because of his religion or religious beliefs, or any other protected characteristic. Indeed, I was not even aware that Plaintiff had mentioned to Mr. Peacock on May 16, 2006, that religion might be a possible issue. The first I learned of his May 16, 2006 conversation with Mr. Peacock concerning religion was during the company's investigation of Plaintiff's EEOC charge, well after Plaintiff's termination date.

[Doc. No. 28-4, Wills's Affidavit, p. 6, ¶32].

Peacock averred that "I never told Mr. Wills or anyone else about Plaintiff's comment about religion." [Doc. No. 28-4, Peacock Affidavit, p. 16, ¶12].

on the ultimate issue of retaliation in order to withstand a motion for summary judgment.").[10]

Johnny's Motion for Summary Judgment on Fontana's retaliation claim is GRANTED.[11]

## III. CONCLUSION

For the foregoing reasons, Johnny's Motion for Summary Judgment [Doc. No. 28] is GRANTED, and Fontana's claims are DISMISSED WITH PREJUDICE, each party to bear its own costs.

MONROE, LOUISIANA, this 27 day of May, 2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[10]Fontana's theory of retaliation is limited to Wills's decision to terminate him; he has not alleged that Peacock took a materially adverse employment action against him. Even if Fontana could establish a *prima facie* case of retaliation with respect to Peacock, he cannot establish that but-for Peacock's retaliatory motive, he would not have been terminated; there is no genuine issue of material fact with respect to whether the initial termination decision by Wills was retaliatory.

[11]Because the Court finds that Fontana has failed to establish a *prima facie* case of retaliation, the Court need not address Johnny's alternative basis for summary judgment.

13